UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 5:20-cv-00308-EBA

ELLA MAE GORDON,                                          PLAINTIFF,

V.                        **MEMORANDUM OPINION AND ORDER**

ANDREW SAUL,
Commissioner of Social Security Administration,               DEFENDANT.

**INTRODUCTION**

Ella Mae Gordon filed an application for supplemental security income on November 22, 2016, alleging disability beginning March 17, 2015. [R. 11-1 at p. 20]. Her application was denied initially and on reconsideration. [*Id.*]. Her case was then heard before an Administrative Law Judge [ALJ] on November 28, 2018. [*Id.*]. In a decision entered on February 1, 2019, the ALJ found that Gordon was not disabled under section 1614(a)(3)(A) of the Social Security Act. [*Id*. at p. 30].

In evaluating the evidence in this case, using the five-step sequential evaluation process, the ALJ found at step one that Gordon has not engaged in substantial gainful activity since the alleged onset date of her disability. *See* 20 C.F.R. § 416.971 *et seq.* At step two, the ALJ determined that Gordon had medically determinable severe impairments of back, neck, and right hip pain, possible migraine, obesity, anxiety disorder, overactive bladder, right shoulder pain by report, degenerative disc disease of the cervical spine, and right-sided weakness in general. [R. 11-1 at p. 22]. At step three, the ALJ considered whether Gordon's impairments met or equaled one of the impairments listed in the regulations. *See* 20 C.F.R. §§ 416.920(d), 416.925, 416.926. Finding they did not, the ALJ then assessed her "residual functional capacity" (RFC), finding that Gordon could perform less than the full range of light work as defined in 20 C.F.R. § 416.967(b).

1

*See* 20 C.F.R. §§ 416.920(e), 416.945. The ALJ went on to find that Gordon had no past relevant work, but she could perform other occupations such as bench work/final assembler, packaging/sorting, and simple weighing, checking, and measuring jobs, all of which existed in significant numbers in the national economy. *See* 20 C.F.R. §§ 416.969 and 416.969(a). Thus, the ALJ determined that Gordon was not disabled.

Plaintiff has raised two arguments on appeal to the District Court, both claiming that the ALJ's RFC determination is unsupported by substantial evidence. [R. 13]. Her first argument alleges that the ALJ failed to properly weigh the medical source opinion of Dr. Vinod Muniswamy. [*Id.*]. Her second argument is that the ALJ failed to properly reconcile Dr. Cristi Hundley's opinion, which the ALJ afforded great weight, with the RFC determination. [*Id.*]. She has moved for judgment on the pleadings, asking that the ALJ's opinion be reversed and her case be remanded for lack of substantial evidence. [R. 13]. The Commissioner also moves for summary judgment, contending that the ALJ reasonably considered the entire record, including all relevant and objective testimony, and ultimately made an RFC determination supported by substantial evidence. [R. 15].

For the reasons that follow, this Court finds that the ALJ's determination was supported by substantial evidence, and thus will deny Plaintiff's motion for judgment on the pleadings and grant the Commissioner's motion for summary judgment.

## LEGAL STANDARD

Pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), this Court may review the record for the limited purpose of inquiring into whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v.*

2

*Perales*, 402 U.S. 389, 390, 401 (1971). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 229 (1938)); *Sias v. Secretary*, 861 F.2d 475 (6th Cir. 1988). In conducting its review, a court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Similarly, an administrative decision is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *See Ulman*, 693 F.3d at 714. Even if the Court were to resolve the factual issues differently, the ALJ's decision must stand if supported by substantial evidence. *See Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990).

## ANALYSIS

### I.

Plaintiff's first argument is that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly weigh the medical source opinion of Dr. Vinod Muniswamy, M.D.

On January 14, 2017, Plaintiff was examined by Dr. Muniswamy. [R 11-1 at p. 465]. Dr. Muniswamy found no muscle asymmetry, atrophy, or involuntary movements. [*Id.*]. He noted that Plaintiff's shoulder strength was 4/5 with a decreased range of motion, her right lower extremity had a strength of only 3/5, her right hip range of motion was painful and limited, and her lower lumbar region was tender to palpate with a decreased range of motion. [*Id.* at p. 466]. Dr. Muniswamy observed that Plaintiff used a cane to walk, was able to rise from a sitting position with assistance, stand on tiptoes and heels, tandem walk with problems, and unable to bend or

squat without difficulty. [*Id.*]. Dr. Muniswamy ultimately concluded that Plaintiff "would likely have significant difficulty sitting, walking, and/or standing for a full workday with frequent and adequate breaks, lifting/carrying objects with limitations secondary to pain." [*Id.* at p. 467].

After considering the record, including the opinion by Dr. Muniswamy the ALJ determined that Gordon could

> …perform less than the full range of light work as defined in 20 C.F.R. 416.967(b). Specifically, claimant can lift 10 pounds frequently and 20 pounds occasionally; stand/walk 2 hours out of an 8 hour day; occasionally climb ramps and stairs; never climb ropes, ladders, or scaffolds; occasionally stoop, kneel, and crouch; never crawl; occasionally balance; occasionally push/pull with right lower extremity; occasional overhead work with right upper extremity; handling fingering frequently with right upper extremity; avoid concentrated exposure to temperature extremes and vibration; avoid all exposure to hazards such as moving machinery and unprotected heights…

[R.11-1 at p. 25].

In explaining his reasoning for his RFC determination, the ALJ afforded Dr. Muniswamy's opinion great weight, finding that his conclusions support the 2-hour stand/walk option in the RFC and the less than full range of light exertional limitation. [*Id.* at p. 28]. The ALJ went on to say, however, that Dr. Muniswamy's conclusion that Plaintiff could not sit for a workday with frequent and adequate breaks "is not supported by the medical evidence of record or claimant's own testimony." [*Id.*]. Plaintiff takes issue with the ALJ's finding that she can stand/walk 2 hours out of an 8 hour day, arguing that the ALJ should have instead given more weight to Dr. Muniswamy's opinion that she would have significant difficulty sitting, walking, and/or standing for a full workday with frequent and adequate breaks in his RFC determination. [R. 13-1 at p. 7]. Plaintiff argues that this determination was in error because the ALJ failed to properly explain why the probative evidence did not support Dr. Muniswamy's opinion. [R. 13-1 at p. 10]. However, Dr. Muniswamy is an examining, non-treating source. *See Staymate v. Comm'r of Soc. Sec.*, 681 F.

4

App'x 462, 467 (6th Cir. 2017) (finding that a consulting examiner was not a treating source entitled to controlling weight); 20 C.F.R. § 416.927(a)(2). As such, the ALJ is not required to give good reasons for assigning weight to a non-treating source. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875-76 (6th Cir. 2007). So, the question presented for this court's review is whether the ALJ considered the proper factors when determining the weight afforded to Dr. Muniswamy's opinion when determining the RFC.

The agency regulations applicable to the instant case lay out certain factors that an ALJ must consider when evaluating a medical opinion. *See* 20 C.F.R. § 416.927(c). An examining source is generally given more weight than a non-examining source. *Staymate*, 681 F. App'x at 467; *see also* 20 C.F.R. § 416.927(c). In addition to this examining relationship, the ALJ may consider "specialization, consistency, [] supportability, . . . [and] [o]ther factors 'which tend to support or contradict the opinion.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013); *see also* 20 C.F.R. § 416.927(c)(1)-(6).

The ALJ's proffered reasoning for giving great weight to Dr. Muniswamy's opinion but ultimately not adopting it in its entirety into the RFC determination was that Dr. Muniswamy's opinion that Plaintiff would have significant trouble walking, sitting, and/or standing for a work day was not supported by medical evidence in the record or Plaintiff's own testimony. The ALJ also stated that Dr. Muniswamy's conclusions, "while not couched in the terms used by the agency, do support the 2-hour stand/walk option in the RFC above and the less than full range of light exertional limitation." Although brief, the ALJ's statements touch on several factors including supportability and consistency of the opinion with other evidence in the record. Further, the evidence cited by the ALJ supports his reasoning that Dr. Muniswamy's conclusions were not supported by the record.

Plaintiff testified during the hearing that she slept four to six hours a night, but that she was "up and down all night" due to pain in her neck, shoulder, and knee, as well as the frequent need to urinate. [R. 11-1 at p. 45]. She stated she could walk for five to ten minutes at a time, could stand for five to ten minutes, and could only sit for ten to fifteen minutes before needing to stand again due to pain. [*Id.* at p. 45-47]. She also testified that sitting too long caused her pain. [*Id.* at p. 43]. When asked what household chores she could do, she stated that she could wash dishes but needed to take breaks from standing, and that she had trouble doing laundry because she found it difficult to bend down. [*Id.* at p. 42-43]. These statements suggest that Plaintiff may have trouble sitting, standing, and/or walking for a full work day. However, they are directly contradicted by Plaintiff's additional testimony that she spent most of her time "propped up" in bed watching tv. [*Id.* at p. 44]. Additionally, the statement that Plaintiff spends most of her day sitting in bed could reasonably be found to contradict Dr. Muniswamy's opinion that Plaintiff would have significant difficulty sitting, walking, and/or standing for a full work day with adequate and frequent breaks.

Likewise, additional medical evidence in the record contradicts Dr. Muniswamy's opinion that Gordon would have significant difficulty sitting, walking, and/or standing for a full workday with frequent and adequate breaks. In December of 2015, Plaintiff sought treatment from Dr. Tamera Spangler for back pain and hyperlipidemia. [R. 11-1 at p. 368]. She also complained of right shoulder pain as well as pain all over her entire body which she ranked as an 8/10. [*Id.*]. Plaintiff continued to be treated by Dr. Spangler primarily for migraines, back pain, and shoulder pain. [*Id.* at p. 360-367]. On March 31, 2016, Plaintiff complained to Dr. Spangler that she had numbness and pain in her legs which made it difficult to walk and requested a cane. [*Id.* at p. 356]. Dr. Spangler noted that Plaintiff's gait was abnormal and prescribed a quad cane. [*Id.* at p. 357].

6

In February of 2016, Plaintiff was examined by Gregory F. Grau, M.D. for complaints of right shoulder pain. [R. 11-1 at p. 344]. Dr. Grau noted that Plaintiff's paraspinous muscle on the right was tender to palpation and that Hawkins Impingement, Neer Impingement, and the Empty Can Test were all positive on her right shoulder. [*Id.*]. Dr. Grau treated her with an injection in her shoulder. [*Id.*]. Dr. Grau also ordered an MRI of Plaintiff's cervical spine which showed significant cervical degenerative disk disease with stenosis and disk herniation. [*Id.* at p. 350]. Plaintiff continued to see Dr. Grau for shoulder and neck pain but declined his recommended treatment of epidural steroid injections and was referred to another doctor to discuss surgery options. [*Id.* at p. 344-350].

Here, contrary to the assertion by Plaintiff, the above evidence does not support Dr. Muniswamy's opinion that Plaintiff would have difficulty sitting, standing, or walking for a workday with adequate and frequent breaks. Plaintiff was treated by Dr. Grau for shoulder, neck, and arm pain, and never complained to Dr. Grau of issues with sitting, walking, or standing. Similarly, with Dr. Spangler, Plaintiff's treatment centered around pain associated with migraines, back pain, and shoulder pain. Plaintiff did complain of pain all over her entire body the first time she saw Dr. Spangler in December of 2015. However, physical exams conducted by Dr. Spangler during each visit showed no edema and only a decreased range of motion in Plaintiff's right shoulder. [*Id.* at p. 362; 369]. Further, Plaintiff's complaints mostly involved migraine, back, and shoulder pain until March of 2016, when she first reported difficulties walking due to leg numbness and pain. [*Id.* at p. 357]. During that visit, Dr. Spangler did note that Plaintiff had a decreased range of motion in her hip with difficulties moving her right leg. Even so, this limited physical observation alone would not support an RFC determination that Plaintiff is unable to stand, walk, or sit for a full workday even with adequate breaks.

Further, state agency medical consultants Jack Reed, M.D. and Robert K. Brown, M.D. both opined that Plaintiff could stand and/or walk with normal breaks four hours out of an eight hour work day and could sit with normal breaks for about six hours. [R. 11-1 at p. 99, 118-119]. The ALJ afforded these opinions great weight but found that medical evidence of Plaintiff's right side weakness and spinal stenosis required a stand/walk option of only two hours instead of the recommended four hours. [R. 11-1 at p. 27].

As the Commissioner points out, this case presents a "not uncommon situation of conflicting medical evidence" which the ALJ has to duty to resolve. [R. 15 at p. 11 (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971))]. Here, Plaintiff's statements regarding her own limitations, as well as portions of the opinion of Dr. Muniswamy, conflict with medical observations by Plaintiff's treating doctors as well as opinions of state agency medical consultants. The ALJ took all of this evidence and ultimately used it to determine an RFC limitation of two hours of standing/walking per work day. It is not for this Court to look at the evidence and make its own factual determination. *See Ulman*, 693 F.3d at 713; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Instead, our review is limited to deciding whether substantial evidence supports the ALJ's decision. *See Bass* at 509 ("If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion."). Here, it does, and the Court finds no error.

## II.

Plaintiff also argues that the ALJ's mental RFC determination is unsupported by substantial evidence because the ALJ failed to reconcile the opinion of Dr. Cristi Hundley with the RFC. [R. 13-1 at p. 11].

8

In December of 2016, Dr. Cristi Hundley was referred by the Kentucky Department for Disability Determination to conduct a mental status evaluation on Plaintiff. [R. 11-1 at p. 461]. Dr. Hundley noted that Plaintiff used a quad cane to walk and moved with a "somewhat uneven posture" and a "slow and uneven" gait. [*Id.*]. Dr. Hundley also noted that Plaintiff seemed to be in a significant amount of discomfort. [*Id.*]. Plaintiff was able to repeat only one trial of six digits forward, one trial of three digits backward, and one trial of four digits backward. [*Id.*]. She was also able to recall three of three items immediately, but after five minutes she could only recall one of three items. [*Id.* at p. 462]. She reported having trouble paying attention due to pain. [*Id.* at p. 463]. Dr. Hundley opined:

> Ms. Gordon's ability to understand and remember simple instructions is mildly to moderately limited and impacted by her level of pain. Her ability to maintain attention and concentration is mildly limited and again impacted by her level of pain. Her ability to interact appropriately in a work setting is mildly to moderately limited and her ability to handle the stresses typically associated with a work environment is moderately limited.

[*Id.*].

When assessing Plaintiff's RFC, the ALJ determined that she had the residual capacity to perform less than the full range of light work, specifically limited to "simple repetitive tasks; able to relate to co-workers and supervisors for task completion, with occasional contact with the public; no fast-paced production goals or quotas." [R. 11-1 at p. 25]. The ALJ afforded great weight to Dr. Hundley's opinion, and specifically addressed that it was reflected in the RFC limitation of simple repetitive tasks. [*Id.* at p. 28]. He also found that Dr. Hundley's opinion was supported by the medical evidence showing pain arising from degenerative disc disease. [*Id.*].

Plaintiff contends that the ALJ erred because he failed to incorporate Dr. Hundley's opinion that Plaintiff is mildly to moderately limited in her ability to understand and remember simple instructions into the RFC limitations. [R. 13-1 at p. 11]. She argues that the ALJ failed to

9

discuss how Plaintiff's limitations factored into her RFC, and that this resulted in the ALJ's ultimate failure to provide the required "accurate and logical bridge" between the evidence and his conclusions. [*Id.* at p. 12 (quoting *Carr v. Astrue*, 2010 U.S. Dist. LEXIS 104973, at *13 (D. Mass. Sep. 30, 2010))]. On the other hand, the Commissioner argues that the ALJ did in fact incorporate and reconcile Dr. Hunley's opinion, as well as the opinions from two other state agency psychologists, with his RFC determination. [R. 15 at p. 11-13].

An RFC is an "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. Therefore, Gordon's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). It is the ALJ's responsibility to determine Gordon's RFC "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir.2000); 20 C.F.R. §§ 416.945; 416.946. The ALJ's RFC determination must be supported by some medical evidence. *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010).

Here, the ALJ drew a logical bridge between Dr. Hundley's opinion and how he factored it into his RFC determination, stating that her opinion was directly reflected in his finding that Plaintiff was limited to "simple, repetitive tasks; able to relate to coworkers and supervisors for task completion, with occasional contact with the public; no fast-paced production goals or quotas." [R. 11-1 at p. 28]; *see also Warfield v. Berryhill*, 2019 U.S. Dist. LEXIS 112272, at *7 (E.D. Ky. July 8, 2019) (holding that the ALJ must only "make a logical bridge between the evidence relied on and the conclusions reached."); *Pollaccia v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 6901, at *15 (E.D. Mich. Jan. 6, 2011).

10

Further, the RFC is supported by substantial evidence. Dr. Hundley's opinion supports the mental limitations determined by the ALJ. Additionally, the RFC is supported by the opinions of two state agency medical consultants. Ilze Sillers, Ph.D. and Kay Barnfield, Psy.D. reviewed Gordon's record in January 2017 and April 2017, respectively, and both found that Gordon's ability to carry out detailed instructions and maintain attention and concentration for extended periods was moderately limited. [*Id.* at p. 101; 122]. The state agency medical consultants also both found that she could maintain concentration and attention for 2 hour segments over an 8 hour period. [*Id.* at p. 102; 122]. They also found that Plaintiff was moderately limited in her ability to interact with the public as well as adapt appropriately to changes in work settings. [*Id.* at p. 102; 122-123]. The ALJ afforded these opinions great weight, finding that they were supported by the medical record as well as Plaintiff's own statement. [*Id.* at p. 28]. Thus, the ALJ's RFC determination of Plaintiff's mental limitations is supported by substantial evidence, and the Court finds no error.

## CONCLUSION

In sum, the ALJ properly weighed the medical source opinion of Dr. Vinod Muniswamy. He also properly reconciled Dr. Cristi Hundley's opinion with Gordon's mental limitations contained in her RFC. Thus,

**IT IS ORDERED** that the Plaintiff's Motion for Summary Judgment [R. 13] be **DENIED**, the Defendant Commissioner's Motion for Summary Judgment [R. 15] be **GRANTED**, and that Judgment is entered affirming the final decision of the Commissioner.

Signed June 9, 2021.



Signed By:
*Edward B. Atkins*   $\mathcal{EBA}$
**United States Magistrate Judge**